IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| SHERMAN CREEK CONDOMINIUMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-375 |
| | ) | |
| MID-CENTURY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| MID-CENTURY INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MGW LAW, LLP; RYAN R. GRAFF; CRIVELLO CARLSON, S.C., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**AMENDED THIRD-PARTY COMPLAINT**

Mid-Century Insurance Company, without prejudice to its denial of liability and affirmative defenses, asserts the following third-party complaint against MGW Law, LLP, Ryan R. Graff, Esq., and Crivello Carlson, S.C. pursuant to Rule 14 of the Federal Rules of Civil Procedure.

**A.  PARTIES, VENUE AND JURISDICTION**

1.  Sherman Creek Condominiums, Inc. ("Sherman Creek") is a non-stock corporation organized and existing under the laws of the State of Wisconsin whose principal business address is N161 W19161 Oakland Drive, Jackson, Wisconsin 53037-8915.

2. Mid-Century Insurance Company ("Mid-Century") is a California corporation with a principal place of business located in California.

3. MGW Law, LLP ("MGW") is a Wisconsin domestic limited liability partnership with a principal place of business in Wisconsin. The partners in MGW (Ryan R. Graff and John Mayer) are citizens of the State of Wisconsin and domiciled in the State of Wisconsin.

4. Ryan R. Graff ("Graff") is an attorney at MGW, one of MGW's founders, and MGW's registered agent in Wisconsin. Upon information and belief, he is a citizen of the State of Wisconsin and is domiciled in Wisconsin.

5. Crivello Carlson, S.C. ("Crivello") is a Wisconsin service corporation with a principal place of business in Wisconsin.

6. This Court has jurisdiction over Sherman Creek's claims against Mid-Century under 28 U.S.C. § 1332(a).

7. This Court also has jurisdiction over Mid-Century's claims against Crivello, Graff and MGW pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. There is complete diversity of citizenship because Crivello, Graff and MGW are each citizens of Wisconsin, while Mid-Century is a citizen of California. The amount in controversy exceeds $75,000 as the amount demanded upon Mid-Century and for which Mid-Century seeks indemnity exceeds $75,000.

8. Mid-Century's claims against MGW, Graff, and Crivello are so related to Sherman Creek's claims that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction over this third-party complaint pursuant to 28 U.S.C. § 1367(a).

9. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**B. SHERMAN CREEK'S CLAIMS AGAINST MID-CENTURY.**

10. Sherman Creek filed an insurance coverage action against Mid-Century in the United States District Court for the Eastern District of Wisconsin, titled *Sherman Creek Condominiums, Inc. v. Mid-Century Insurance Company* and identified as case number 19-cv-1735-BHL ("Coverage Action"). On or about December 22, 2022, Sherman Creek and Mid-Century reached an agreement to settle the Coverage Action. A true and correct copy of the email confirming the parties' agreement is Exhibit 1.

11. As reflected in a written settlement agreement and release ("Agreement"), Mid-Century agreed to issue a payment in exchange for dismissal of the Coverage Action. A true and correct copy of the Agreement is attached hereto as Exhibit 2.

12. On or about February 20, 2023, Sherman Creek filed this action against Mid-Century alleging that Sherman Creek breached the terms of the Agreement. Sherman Creek currently asserts two counts against Mid-Century. First, Sherman Creek alleges Mid-Century breached its obligations under the Agreement by failing to tender the settlement funds to Sherman Creek. Second, Sherman Creek seeks a declaratory judgment that Mid-Century must tender payment under the Agreement.

13. Mid-Century denies liability to Sherman Creek because in satisfaction of its obligations under the Agreement, Mid-Century issued payment ("Mid-Century Payment") pursuant to wire transfer instructions transmitted from an email account maintained by Sherman Creek's attorneys, at MGW.

14. Despite that payment, Sherman Creek alleges that it failed to receive the settlement payment and asks this Court to order Mid-Century to issue a second payment. Sherman Creek

seeks such relief, even though its agent and attorneys allowed a threat actor to breach its email accounts and use its email accounts to steal confidential information and induce Mid-Century to issue the Mid-Century Payment.

    **C.**    **USE OF MGW EMAIL ACCOUNTS TO TRANSMIT PAYMENT INSTRUCTIONS**

    15.    Ryan Graff, an attorney with and partner in MGW, represented Sherman Creek in the Coverage Action and represents MGW in this action. In this action, he identified his authorized email address as follows:

> MGW Law, LLP
>
> By:   /s/ Ryan R. Graff
>       _____
>       John F. Mayer
>       State Bar No. 1017384
>       Ryan R. Graff
>       State Bar No. 1051307
>       Katherine T. Mayer
>       State Bar No. 1115856
>       Attorneys for Plaintiff Sherman Creek
>       Condominiums, Inc.
>       1425 Memorial Drive, Suite B
>       Manitowoc, WI 54220
>       (920) 683-5800 Telephone
>       1-800-465-1031 Facsimile
>       jmayer@mgwlawwi.com
>       rgraff@mgwlawwi.com
>       kmayer@mgwlawwi.com

    16.    At all times, Graff maintained an email account with the following email address: rgraff@mgwlawwi.com. At all times, Graff represented to Crivello Carlson that he maintained an email account with the following email address: rgraff@mgwlawwi.com ("Graff Email Account").

    17.    By approximatively December 22, 2022, a threat actor infiltrated the Graff Email Account and used MGW's servers. The threat actor thereafter used the Graff Email Account and MGW's servers to send an email to counsel for Mid-Century, Crivello Carlson. Upon information and belief, the threat actor learned the terms of the Agreement through a breach of the Graff Email Account, including the amount due to Sherman Creek under the Agreement.

18. Relying upon confidential information learned about the Agreement through a breach of MGW's email accounts, the threat actor thereafter used the Graff Email Account and MGW's servers to communicate with counsel for Mid-Century.

19. Crivello Carlson, as counsel for Mid-Century, received an email dated January 5, 2023 (the "Payment Email") from MGW's email account purporting to transmit instructions to wire transfer the amount due under the Agreement. A true and correct copy of that email is Exhibit 3. The Payment Email enclosed a W-9 and payment instructions. The following image reflects the substance of the Payment Email:



20. To trace the source of the Payment Email, Mid-Century retained forensic expert Dr. Hartley. Dr. Hartley determined that the email originated from MGW's email system and that nothing in the technical attributes of the email contained any indicators that the message's origin was spoofed. (Exhibit 4 is a true and correct copy of a declaration executed by Dr. Hartley). In

other words, Mid-Century received and followed an email from the Graff Email Account and through MGW's legitimate email servers.

21. Dr. Hartley concluded that the Payment Email was transmitted from MGW's email server and by someone with access to the Graff Email Account. (Ex. 4, ¶¶ 4-5). Dr. Hartley reached that conclusion based upon a forensic evaluation of the native email transmitting the payment instructions, which is set forth in detail in his declaration. (Ex. 4, ¶¶ 6-24).

22. Dr. Hartley examined the Payment Email to determine whether it originated from MGW's email system based on the technical characteristics of the message. Based upon his forensic examination, Dr. Hartley concluded that the Payment Email,

(1) is *a valid email* sent from Graff's email account;

(2) was sent via MGW's email servers;

(3) was sent from an IP address permitted by the domain owner to send emails using an identity corresponding to the email identity of Graff (rgraff@mgwlawwi.com);

(4) contains no evidence of sender obfuscation; and

(5) contains no flags or indicators of spoofing or a mismatch between the purported identity of the sender and the actual sender.

(Ex. 4, Hartley Decl., at ¶ 4).

23. Dr. Hartley obtained the Payment Email in native format, which is a .pst file (also known as "personal storage table" file, which is a Microsoft Outlook Data File that stores a user's Outlook data for POP3, IMAP and web-based mail accounts, such as emails and email attachments). (Ex. 4, Hartley Decl., at ¶ 6). From this .pst file, he extracted the Payment Email in a .msg format (an email message saved within Microsoft Outlook, which contains one or more email fields, including date, sender, recipient, subject, and more) and preserved the email header information. (Ex. 4, Hartley Decl., at ¶ 6). This process allowed Dr. Hartley to examine the

6

technical properties of the Payment Email, including the header, routing information and sender identity.

24. Embedded within the native email is message metadata (such as a message ID, message date, sender, and documentation of the path traversed by an email on its way from sender to recipient). (Ex. 4, Hartley Decl., at ¶ 9). Email servers append routing fields to the message header as the message is passed from server to server on its way to the recipient. (Ex. 4, Hartley Decl., at ¶ 10). As a result, the message's routing path is available from the email header and Dr. Hartley was therefore able to trace the transmission of the Payment Email. (Ex. 4, Hartley Decl., at ¶ 10).

25. As detailed in Dr. Hartley's declaration, the following graphic displays the message delivery path for the Payment Email.

**Message Header Routing Information (The January 5, 2023 email Message)**

| Hop↓ | Submitting host | Receiving host | Time |
|---|---|---|---|
| 1 | BYAPR07MB5750.namprd07.prod.outlook.com ([fe80::a0b5:febd:6f09:ea03]) | BYAPR07MB5750.namprd07.prod.outlook.com ([fe80::a0b5:febd:6f09:ea03%5]) | 1/5/2023 11:12:13 AM |
| 2 | BYAPR07MB5750.namprd07.prod.outlook.com (2603:10b6:a03:a2::29) | BYAPR07MB6247.namprd07.prod.outlook.com (2603:10b6:a03:11c::25) | 1/5/2023 11:12:13 AM |
| 3 | NAM12-MW2-obe.outbound.protection.outlook.com (Not Verified[40.107.244.94]) | mail.crivellocarlson.com (using TLS: TLSv1.2, ECDHE-RSA-AES256-GCM-SHA384) | 1/5/2023 11:12:18 AM |

(Ex. 4, Hartley Decl., at ¶ 10). The message header reveals that the message was sent from a Microsoft email server at the "outlook.com" domain. (Ex. 4, Hartley Decl., at ¶ 11).

26. The Domain Name Resolution system is used to resolve domain names to IP addresses and to store other internet domain-related information. An MX record for a given domain within DNS provides the email server information for that domain. As reflected in the free Security

7

Trails service, Microsoft was the email provider for the MGW domain at the time of the Payment Email. (Ex. 4, Hartley Decl., at ¶ 12). The following graphic displays the results of that research:

**Historical MX (Mail eXchanger) record for "mgwlawwi.com"**

| Mail Servers | Organization | First Seen | Last Seen | Duration Seen |
|---|---|---|---|---|
| mgwlawwi-com.mail.protection.outlook.com | Microsoft Corporation | 2020-06-18 (3 years) | 2023-02-11 (24 days) | 3 years |

27. With an email, the "**X-OriginatorOrg**" header field is a record the sender's domain. (Ex. 4, Hartley Decl., at ¶ 13).

28. The "**X-OriginatorOrg**" field attached to the Payment Email reflected the sender's domain as follows: "X-OriginatorOrg: mgwlawwi.com." In connection with the Payment Email, the value in "**X-OriginatorOrg**" header field matches the MGW law firm's domain "mgwlawwi.com" and is consistent with the message originating from the MGW's email system.

29. A recipient's email system attempts to authenticate the message and identify any problems with the message, such as detecting email spoofing or email modification. (Ex. 4, Hartley Decl., at ¶ 14). A recipient's email server checks the originating server's IP address for the message and compared it against the list of authorized IP addresses allowed to send emails for a given domain. (Ex. 4, Hartley Decl., at ¶ 14).

30. In connection with the Payment Email, the metadata indicates the results of the various email checks and recorded attributes as follows:

- "Received-SPF: Pass (domain mgwlawwi.com designates 40.107.244.94 as a permitted sender), client-ip=<40.107.244.94>; identity=<rgraff@mgwlawwi.com>; helo=<NAM12-MW2-obe.outbound.protection.outlook.com>;"

- "ARC-Authentication-Results: i=1; mx.microsoft.com 1; spf=pass smtp.mailfrom=mgwlawwi.com; dmarc=pass action=none header.from=mgwlawwi.com; dkim=pass header.d=mgwlawwi.com; arc=none"

8

(Ex. 4, Hartley Decl., at ¶ 15).

31.  The checks identified in Paragraph 29 validated that the Payment Email originated from mgwlawwi.com in two respects. First, the "Received-SPF: Pass" attribute is the result of the Sender Policy Framework check, which looks up the "TXT" record published in the DNS by the owner of the sending domain ("mgwlawwi.com") and compares the sending host for the message against the 'authorized' or 'permitted' senders. (Ex. 4, Hartley Decl., at ¶ 15). This result indicates that the receiving email system recorded the Payment Email was sent from an IP address permitted by the MGW law firm to send emails for the "mgwlawwi.com" domain. (Ex. 4, Hartley Decl., at ¶ 15). Second, the value recorded as part of the SPF check also reflects the fact that the SPF check was performed for the **identity** of "rgraff@mgwlawwi.com", the actual email address of Graff of MGW (source: https://mgwlawwi.com/about/). (Ex. 4, Hartley Decl., at ¶ 16).

32.  The "ARC-Authentication" header fields are part of the Authenticated Received Chain mechanism to preserve email authentication results in the case messages need to be forwarded by intermediate email servers/mail forwarders. (Ex. 4, Hartley Decl., at ¶ 17). In the case of the Payment Email, this field recorded both the smtp.mailfrom and the header.from values. (Ex. 4, Hartley Decl., at ¶ 17). Both fields reflected the value of "mgwlawwi.com". Because both fields reflected the value of "mgwlawwi.com", these fields validate that the Payment Email was sent from MGW's email domain. (Ex. 4, Hartley Decl., at ¶ 18).

33.  Microsoft adds a number of its own header fields to email messages. (Ex. 4, Hartley Decl., at ¶ 19). Within the "x-forefront-antispam-report" header field of the Payment Email, the following fields and values are recorded:

- "SCL:1"
- "SFV:NSPM"
- "IPV:NLI"
- "CAT:NONE"

9

(Ex. 4, Hartley Decl., at ¶ 19). As explained by Dr. Hartley, these fields reveal that the Payment Email was not spam (Ex. 4, Hartley Decl., at ¶ 20), was sent to the intended recipients (Ex. 4, Hartley Decl., at ¶ 21), and did not originate from an IP address known to Microsoft as a known bad reputation or IP blacklist (Ex. 4, Hartley Decl., at ¶ 22).

34. The Payment Email was as transmitted from MGW's email server.

35. The Payment Email was sent from Graff's email account (rgraff@mgwlawwi.com).

36. The Payment Email was an email sent from Graff's email account.

37. The Payment Email was sent from an IP address permitted by the domain owner to send emails using the Graff Email Account.

38. The Payment Email contains no evidence of sender obfuscation.

39. The Payment Email contains no flags or indicators of spoofing or a mismatch between the purported identity of the sender and the actual sender.

40. As reflected in the attached declaration from Dr. Bruce Hartley (Ex. 4), Mid-Century confirmed that the payment directions it followed derived from MGW's email account.

41. Pursuant to the enclosed payment instructions, Mid-Century wired the full settlement sum in satisfaction of its agreement with Sherman Creek.

### D. MID-CENTURY ISSUED PAYMENT

42. On January 5, 2023, Ms. Luell (Crivello) forwarded the Payment Email to Mid-Century. From Mid-Century's perspective, the Payment Email appeared to be sent by Sherman Creek's attorney (MGW) and enclosed payment instructions (to facilitate payment of settlement proceeds). A true and correct copy of the payment instructions are Exhibit 5.

43. On January 18, 2023, Mid-Century wire transferred $1.75 million pursuant to the instructions attached to the Payment Email. That wire transfer represented Mid-Century's full payment of its settlement with Sherman Creek. A true and correct copy of the proof of payment

is Exhibit 6.

44. Mid-Century issued the wire transfer pursuant to those instructions because they were transmitted from the email account maintained by Sherman Creek's attorneys, MGW. At all times, Mid-Century understood and believed that Sherman Creek's attorneys, MGW, had authority to direct payment of the settlement proceeds and followed payment instructions sent from the email accounts of MGW.

**COUNT I: BREACH OF CONTRACT (AGAINST MGW AND GRAFF)**

45. Mid-Century incorporates by reference the allegations of paragraphs 1 through 44 above, as though fully set forth herein.

46. Graff, while an attorney for Sherman Creek and a partner in MGW, signed the Agreement. The Agreement contains the following language:

> Except as required above, neither the Parties nor their attorneys or other representatives will in any way disclose the terms and conditions of this settlement to (a) any individual or entity, or (b) publicize or cause to be publicized in any news or communications media, including but not limited to newspapers, magazines, journals, radio, television or electronic media, social media sites, including but not limited to blogs and other websites. All parties to this Agreement expressly agree to decline comment on any aspect of this Agreement to any member of the news media.

47. MGW and Graff represented Sherman Creek in connection with the Coverage Action, including negotiations over the Agreement. MGW communicated with counsel for Mid-Century, Crivello Carlson, on behalf of Sherman Creek. MGW represented that it had authority to communicate on behalf of Sherman Creek and was an agent of Sherman Creek in connection with the Coverage Action, including negotiations over the Agreement.

48. By approximatively December 22, 2022, a threat actor infiltrated the Graff Email Account and used MGW's servers. The threat actor thereafter used the Graff Email Account and MGW's email servers to send the Payment Email to counsel for Mid-Century, Crivello Carlson.

11

49. Upon information and belief, the threat actor learned the terms of the Agreement through a breach of MGW's email accounts, including the amount due to Sherman Creek under the Agreement. Relying upon confidential information learned about the Agreement through a breach of the Graff Email Account and through use of MGW's email servers, the threat actor thereafter used the Graff Email Account and MGW's email servers to communicate with counsel for Mid-Century.

50. The Agreement provides that Sherman Creek and its attorneys will not "disclose the terms and conditions of this settlement to (a) any individual or entity, or (b) publicize or cause to be publicized in any news or communications media, including but not limited to newspapers, magazines, journals, radio, television or electronic media, social media sites, including but not limited to blogs and other websites."

51. MGW and Graff breached the Agreement by allowing the disclosure of the Agreement and its terms to the threat actor. MGW and Graff failed to abide by the terms of the Agreement by failing to maintain the confidentiality of the Agreement and its terms. As a result of the disclosure of confidential information in the Agreement, the threat actor was able to induce Mid-Century to issue payment pursuant to wire transfers attached to the Payment Email.

52. Sherman Creek asserts in its complaint that it did not receive payment from Mid-Century and that Mid-Century is required to issue a duplicative payment to Sherman Creek. To the extent that Sherman Creek obtains a duplicative payment from Mid-Century, Mid-Century will incur damages in the amount of that payment and those damages will be proximately caused by a breach of the confidentiality agreement in the Agreement because: (a) the threat actor learned of the Agreement and its terms through a breach of the Graff Email Account and MGW's servers; (b) the threat actor used confidential information learned through a breach of the Graff Email Account

and MGW's servers to induce Mid-Century to issue the Mid-Century Payment pursuant to wire instructions attached to the Payment Email; and (c) absent disclosure of confidential information through a breach of the Graff Email Account and use of MGW's email servers to transmit the wire instructions attached to the Payment Email, Mid-Century would not have issued the Mid-Century Payment.

53. MGW and Graff were responsible for maintaining the security of their communications thereby keeping the settlement terms confidential.

54. MGW and Graff failed to maintain confidentiality of the settlement terms.

55. To the extent that Sherman Creek prevails on its claim against Mid-Century or otherwise obtains a judgment/order requiring Mid-Century to issue a duplicative payment, Mid-Century's duplicative payment will be proximately caused by MGW's and Graff's breach of the terms of Agreement and thus, MGW and Graff are responsible to Mid-Century for the amount of any such payment and its damages.

WHEREFORE, Third-Party Plaintiff, Mid-Century Insurance Company, requests judgment against MGW and Graff in amount to be determined, plus attorney's fees and costs and for such other relief as the Court may deem just and proper.

## COUNT II: NEGLIGENCE (AGAINST MGW AND GRAFF)

56. Mid-Century incorporates by reference the allegations of paragraphs 1 through 55 above, as though fully set forth herein.

57. Rule 1.6(d) of the Rules of Professional Responsibility provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client."

58. MGW and Graff learned of the Agreement and its terms in connection with its representation of a client (Sherman Creek).

13

59. Because MGW and Graff learned of the Agreement and its terms in connection with its representation of a client (Sherman Creek), MGW and Graff had a duty to use reasonable efforts to prevent the unauthorized access to information relating to its representation of its client. MGW breached this duty by permitting a threat actor to gain unauthorized access to such information. MGW's breach caused Mid-Century to sustain damages by directing Mid-Century's payment of the settlement funds to an account controlled by the threat actor, not Sherman Creek.

60. MGW and Graff did not make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to confidential terms of the Agreement.

61. Sherman Creek asserts in its complaint that it did not receive payment from Mid-Century and that Mid-Century is required to issue a duplicative payment to Sherman Creek. To the extent that Sherman Creek obtains a duplicative payment from Mid-Century, Mid-Century will incur damages in the amount of that payment and those damages will be proximately caused by MGW's and Graff's failure to use reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to confidential terms of the Agreement.

62. As a proximate result of MGW's and Graff's reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to confidential terms of the Agreement, a threat actor infiltrated MGW's and Graff's email account and used MGW's and Graff's email account to send the Payment Email and induce Mid-Century to issue payment pursuant to the instructions attached thereto.

63. To the extent that Sherman Creek prevails on its claim against Mid-Century or otherwise obtains a judgment/order requiring Mid-Century to issue a duplicative payment, Mid-Century's duplicative payment will be proximately caused by MGW's and Graff's breach of the

terms of Agreement and thus, MGW and Graff are responsible to Mid-Century for the amount of any such payment.

WHEREFORE, Third-Party Plaintiff, Mid-Century Insurance Company, requests judgment against MGW and Graff in amount to be determined, plus attorney's fees and costs and for such other relief as the Court may deem just and proper.

**COUNT III: TORTIOUS INDUCMENT TO BREACH (AGAINST MGW AND GRAFF)**

PREVIOUSLY DISMISSED AND THEREFORE OMITTED WITHOUT PREJUDICE

**COUNT IV: CONTRIBUTION (AGAINST MGW AND GRAFF)**

64. Mid-Century incorporates by reference the allegations of paragraphs 1 through 63 above, as though fully set forth herein.

65. Mid-Century does not admit the allegations contained the Sherman Creek Complaint or any liability to Sherman Creek, but to the extent that Mid-Century is found to be liable to Sherman Creek for damages arising from any of the claims asserted in the Sherman Creek Complaint, Mid-Century seeks contribution from MGW and Graff.

66. To the extent Sherman Creek prevails on its allegations (which Mid-Century contests), MGW's and Graff's conduct caused Sherman Creek to not receive Mid-Century's payment. As a result, Mid-Century is entitled to contribution.

67. To the extent that Sherman Creek prevails on its claim against Mid-Century or otherwise obtains a judgment/order requiring Mid-Century to issue a duplicative payment, Mid-Century's duplicative payment will be proximately caused by MGW's and Graff's breach of the terms of Agreement and thus, MGW and Graff are responsible to Mid-Century for the amount of any such payment.

15

Case 2:23-cv-00375-BHL   Filed 10/17/23   Page 15 of 19   Document 45

WHEREFORE, Third-Party Plaintiff, Mid-Century Insurance Company, requests judgment against MGW and Graff in amount to be determined, plus attorney's fees and costs and for such other relief as the Court may deem just and proper.

## COUNT V: LEGAL MALPRACTICE (AGAINST CRIVELLO)

68. Mid-Century incorporates by reference the allegations of paragraphs 1 through 67 above, as though fully set forth herein.

69. Sherman Creek filed a motion to enforce the Agreement. Graff filed a declaration in support of that motion. Despite a breach of MGW's email account and the use of those accounts to transmit the Payment Email, MGW and Graff allege that Crivello should have known that the payment instructions attached to the Payment Email were fraudulent and/or not authentic.

70. First, MGW notes that the threat actor provided Crivello "a fake W-9 for a business called Mayer, Graff & Wallace, LLP (a name that MGW had previously gone by but legally changed in fall of 2022) with the business name listed as 'DBA Fleming & Company, LLC'…" MGW alleges that Crivello knew or should have known the correct name of the firm and that it did not conduct business under the name "Fleming & Company." Crivello did not notify Mid-Century that MGW lacked any relationship with or did not conduct business under the name Fleming & Company, LLC. A true and correct copy of the W-9 attached to the Payment Email is Exhibit 7.

71. Second, MGW notes that the threat actor provided Crivello with bank routing information identifying an account in the name of Fleming & Company. MGW alleges that Crivello knew or should have known that this was not the correct account because it has settled other cases with Crivello and those payments were not directed to an account in the name of Fleming & Company: "MGW has settled cases defended by Crivello Carlson on multiple occasions… Further, MGW has directed that checks be made payable to the MGW trust account

16

and nowhere in any of these documents does Fleming & Company, LLC appear." Crivello did not notify Mid-Century that MGW had not previously conducted business through an account in the name of Fleming & Company, LLC.

72. Third, MGW notes that it has settled other cases with Crivello and provided Crivello correct W-9 forms: "MGW has settled cases defended by Crivello Carlson on multiple occasions and has thus provided Crivello Carlson with MGW's proper W-9 previously." MGW notes its prior relationship as a means of suggesting that Crivello possessed the correct W-9 and should have known that the fraudulent W-9 was not correct. Upon information and belief, Crivello did not compare the W-9 attached to the Payment Email to W-9s provided by MGW in prior cases.

73. Fourth, MGW notes that it sent Crivello an email and advised Crivello that it had received "weird emails" about the settlement payment: "Any update on payment? I keep getting weird emails about money transfer and suspect it has nothing to do with you." MGW alleges that that Crivello was on notice of irregularities and should have been on guard for a potential fraud. Crivello did not notify Mid-Century of this disclosure. A true and correct copy of MGW's email to Crivello is Exhibit 8.

74. Sherman Creek asserts in its complaint that it did not receive payment from Mid-Century and that Mid-Century is required to issue a duplicative payment to Sherman Creek. To the extent that Sherman Creek prevails on its theory that Mid-Century breached its contract, Mid-Century will incur damages in the amount of that payment.

75. To the extent that MGW and Graff are not responsible for the damages incurred by Mid-Century and/or MGW and Graff are allowed to allocate fault for Mid-Century's damages based upon the acts, errors and omissions of Crivello, Crivello is liable for Mid-Century because it owed a duty to Mid-Century and its breached its duty to Mid-Century.

17

WHEREFORE, Third-Party Plaintiff, Mid-Century Insurance Company, requests judgment against Crivello in amount to be determined, plus attorney's fees and costs and for such other relief as the Court may deem just and proper.

Dated: October 17, 2023

          Respectfully submitted,

          GORDON REES SCULLY MANSUKHANI

          *s/ Scott L. Schmookler*
          Scott L. Schmookler
          One North Franklin, Suite 800
          Chicago, IL 60606
          Telephone: 312-980-6779
          Fax: 312-565-6511
          sschmookler@grsm.com
          *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 17, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*s/ Scott L. Schmookler*
Scott L. Schmookler